STATE EX REL. B. A. HAYES v. DAVID T. DAVIES, AUD., ET AL.

1. COURTS ARE ESTABLISHED AND ADMINISTERED FOR PUBLIC BENEFIT AND WELFARE AS WELL AS PROTECTION OF INDIVIDUAL RIGHTS.

    The courts are public and not private tribunals; they are established and administered for the public benefit and welfare as well as for the protection of individual rights.

2. LANING R. L. 8698 PROVIDING THAT COUNTY SHALL PAY JURORS' FEES NOT UNCONSTITUTIONAL.

    Laning R. L. 8698 (R. S. 5182), providing that each grand and petit juror in either a civil or criminal case shall be allowed two dollars per day for each day he serves, together with mileage in certain cases, is not unconstitutional in that it also provides that such compensation shall be paid by the county instead of the parties in the civil case and by the state in the criminal case. The fact that criminal actions are brought in the name of the "State of Ohio" is unimportant.

ERROR to Lucas common pleas court.

**B. A. Hayes,** for plaintiff in error.

**W. G. Ullery,** for defendant in error.

## WILDMAN, J.

State ex rel. Birchard A. Hayes v. David T. Davies, auditor of Lucas county, and Peter Parker, treasurer of Lucas county, and State ex rel. Birchard A. Hayes v. Peter Parker, treasurer of Lucas county, Ohio, and David T. Davies, auditor of Lucas county, are both cases in which the constitutionality of Lan. R. L. 8698 (R. S. 5182), is involved. For my own convenience, I will consider first case No. 1924. The petition below, brought by Mr. Hayes, as a taxpayer, was for an injunction, to enjoin the county officials named from payment to one Charles F. Bischoff, a petit juror, who had served, as alleged in the petition, as a juror in a civil case, between certain parties named, from payment of his fees. It was claimed that this was a private service and that the jury fee which had been paid by the county treasurer would have been paid by the litigants, or possibly by the litigant losing the case.

The statute provides that:

"Each grand and petit juror drawn from the jury box pursuant to law, and each juror selected by the court, pursuant to section 8688 [5173] of this chapter, and each talesman shall be allowed two dollars per day, for each day he serves, and if not a talesman, five cents per mile from his place of residence to the county seat, and such compensation shall be

certified by the clerk of the court, and paid by the county treasurer on the warrant of the county auditor.''

It is not claimed in this petition or in argument, that there is any reason for the nonpayment by the county treasurer of this fee other than the alleged invalidity of the act, Lan. R. L. 8698 (R. S. 5182).

A demurrer to the petition below was sustained by the court and judgment entered accordingly. The only question, then, before this court is as to the constitutionality of this statute. It is not apparent from the petition whether this juror was a talesman or a regular juror for the term, and whatever might be the criticism of this act as to a service rendered by a person called for a particular case, it would seem that a like criticism could not be made as to a person called as a juror for all cases during a term, or a part of the term wherein he might render service in both civil and criminal cases, and in which service it would hardly be claimed that any particular litigant should be compelled to pay the expenses. The statute makes no distinction between civil and criminal cases. The jurors are paid a *per diem*, they are not paid by the case. Even a called juror is not paid so much for a case in which he serves, but he is paid for the days which he serves and the only difference between his compensation and that of a regular juror is, that the regular juror draws mileage and he does not.

But is the service which is rendered, even in a civil case, one between private litigants, solely a private service? Courts are public and not private tribunals. They are established and administered partly for the protection of private rights, but they are established also for the public benefit, the public welfare. The interests of the whole public demand that disputes between individuals should be settled by a judicial tribunal rather than by force and possibly by bloodshed. It is a public purpose that is subserved, because it tends to public peace and public quiet, and the jurors sitting to try civil cases between private litigants are just as much a part of the public machinery established for the public welfare, as are the judges and the officials of the court issuing the processes and enforcing the orders, judgments and decrees—they are all parts of the same machinery, they all aid to conserve the peace and they are all essential to the government. The courts are a part of the government of the land, an independent branch, just as much as is the executive, or the legislative. It is true that individuals may be benefited, and the legislature, for that reason, have required them to pay a part of the costs, as in the Iowa case, cited in the brief of counsel, and as in our statute by which railroad and other corporations may appropriate private property.

State v. Davies.

The case cited from *Detroit So. Ry.* v. *Lawrence Co. (Comrs.)* 71 Ohio St. 454 [73 N. E. Rep. 510], is a case wherein the Supreme Court of Ohio has decided that jurors' fees in such cases may be properly taxed to the corporation seeking to appropriate. The claim was made there, that the law permitting it was unconstitutional, in that the fees were required to be paid by the individual corporation rather than by the county, and the statute was defended upon the ground that the law did subserve partly a private purpose. There are many statutes which have for their object the benefit of the public and also the benefit of individuals. Our tax on dogs for the benefit of the sheep owners, is cited as an illustration. The sheep owner is interested in the protection of his sheep, but the public is also supposed to be interested, in a way, and therefore the statute which provides that a tax shall be levied on dogs and that the fruit of the tax shall go to the owner of the sheep, was held constitutional by our Supreme Court in the case of *Holst* v. *Roe,* 39 Ohio St. 340 [48 Am. Rep. 459].

The statute now under consideration is an evolution from the earlier statutes. The attorney, Mr. Hayes, who is also a party litigant, has shown great industry in his search, in his critical examination of the legislation from the early history of the state and has traced the course of that legislation up to the present time, and if anything is clearly indicated by the result of this search, it is that there has been a long acquiescence in the existing mode of paying grand and petit jurors from the county treasury, whether they serve in civil cases or in criminal. It appears that for twenty years before the present constitution of 1851 was adopted and for half a century since, the law of the state has required the payment of grand and petit jurors, at least in part, from the county treasury and in the case of *State* v. *Baker,* 55 Ohio St. 1 [44 N. E. Rep. 516], it was expressly held by our Supreme Court, that a long acquiescence in a statute is to be considered as bearing upon its constitutionality and validity. All doubts should be resolved in favor of the law attacked but we have no doubts in this case. The constitutionality of the statute seems to us clear, so far as case No. 1924 is concerned and judgment of the court below sustaining the demurrer and rendering judgment thereon is affirmed.

In case No. 1923, the parties are the same and the same section is attacked from another standpoint. In this case we have involved the case of two jurors, one a grand juror and one a petit juror, who served in a criminal case. It is claimed that the prosecution of persons for alleged crime is a state purpose and that the fees of jurors rendering services in such prosecutions, whether with the grand or the petit jury,

should be paid by the state and not by the county. It is suggested that the title of such cases is "State of Ohio v." this or that defendant. We deem this fact unimportant. We have many private cases where the state is named as a party plaintiff. In this very case the state brings the suit on the relation of Birchard A. Hayes as relator, and the fact that the state is a nominal plaintiff, does not, we think, bear upon the question as to who should pay the costs. The grand juror and the petit juror served, it is said, in criminal cases—cases which were brought for the prosecution of alleged violations of the statute law. Our legislature has made certain discriminations as to the means of payment of court officers. It becomes, we think, a matter of convenience and right adjustment and also of propriety of adjustment in view of the kind of service. The judges are paid, some by the state and some partly by the state and partly by the counties, and certain county officials—who are also a portion of the court machinery, like the sheriff and clerk—are paid by the county, or may be paid by the litigants.

Now it is true that funds of the county cannot be taken for exclusively state purposes, as was held in the cases cited by counsel, in the case of *Wasson* v. *Commissioners*, 49 Ohio St. 622 [32 N. E. Rep. 472; 17 L. R. A. 795], and in *Hubbard* v. *Fitzsimmons*, 57 Ohio St. 436 [49 N. E. Rep. 477]. But, is the case one in which it can be said that the service rendered is confessedly for state purposes rather than for county purposes? The whole state is affected by the lax administration of the law in one county. Is there not some reason apparent for making the counties bear at least some portion of the expense of the prosecution of crimes committed within the borders of the county? It is true that the legislature in the effort to effect a fair distribution of such expenses, requires the costs of some criminal prosecutions to be borne by the state. But, on the other hand, we have had a recognition for very many years of a right to hold particular parts of the state responsible for the lax administration of the law in such parts. If the officers of a county fail to follow up crime and a part of the expense is charged on the people of the county which elected them, a public purpose is thereby subserved. The people of the county will perhaps be a little more careful in their selection of officers to execute the law and conserve the peace, if they have knowledge that some of the expense of a lax administration will be a burden to be borne by themselves. We have a law in this state which is an illustration of an effort on the part of the people to hold a particular part of the state responsible for lax administration of the law within its boundaries, in the case of lynchings, which requires that the county shall bear the burden in the way of damages or injury caused by lynchers. The

State v. Davies.

section of the statute is Lan. R. L. 6992 (B. 4426-4), and our Supreme Court in *Champaign Co. (Comrs.)* v. *Church,* 62 Ohio St. 318 [57 N. E. Rep. 50; 48 L. R. A. 738; 78 Am. St. Rep. 718], in two cases, holds this act to be constitutional.

This principle is no novel one. Under the English system from time immemorial, a particular subdivision of the country, known as a hundred, was held responsible to a certain extent, for crimes committed within its borders. From 4 Blackstone's Commentaries 293, I read this:

"* * * and that hue and cry shall be raised upon the felons, and they that keep the town shall follow with hue and cry with all the town and the towns near; and so hue and cry shall be made from town to town, until they be taken and delivered to the sheriff. And that such hue and cry may more effectually be made, the hundred is bound by the same statute, chapter three, to answer for all robberies committed therein, unless they take the felon; which is the foundation for an action against the hundred in case of any loss by robbery."

And looking back to other pages I find a recognition of the principle of holding the hundred liable for a loss where a robbery is committed within its borders, to be an adoption of a rule which had obtained in some oriental countries whereby large parts of a country were practically preserved from crime by holding those parts responsible for losses sustained thereby. So, as I have said, there is no novelty in this imposition upon the county treasury of some part of the burden of the expense of prosecuting crime although that prosecution may be carried on in the name of the state and although, for the protection of the general public, the prosecutor may bring to his aid all the instrumentalities of the state, all the power and majesty of the law of the state, for the punishment of crime.

In the judgment of the court, the decision below sustaining the demurrers to these two petitions and rendering judgment accordingly, should be sustained and the judgment should be affirmed.

**Haynes** and **Parker, JJ.,** concur.